DONALD SPECTER (SBN 83925)
KELLY KNAPP (SBN 252013)
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704

MAUREEN P. ALGER (SBN 208522)
MONIQUE R. SHERMAN (SBN 227494)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000

ATTORNEYS FOR PLAINTIFFS
[ADDITIONAL COUNSEL LISTED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN HALL, SHAUN GONZALES, ROBERT MERRYMAN, DAWN SINGH, and BRIAN MURPHY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF FRESNO<br><br>Defendants. | Case No. 1:11-CV-02047-LJO-BAM<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES**<br><br>Date:          September 28, 2015<br>Time:          3:00 p.m.<br>Courtroom:  8<br>Judge:         Hon. Barbara McAullife<br>Action Filed: December 13, 2011 |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

MARY KATHRYN KELLEY (SBN 170259)
SHANNON SORRELLS (SBN 278492)
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 490-6000

MELINDA BIRD (SBN 102236)
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 209
Los Angeles, CA 90017
Telephone: (213) 213-8000
Fax: (213) 213-8001


[ADDITIONAL COUNSEL LISTED ON CAPTION PAGE]

# INTRODUCTION

In May 2015, after one year of litigation and more than two years of extensive settlement negotiations, the parties entered into a Consent Decree to settle class claims for injunctive relief in this suit concerning inadequate healthcare, disability discrimination, and an unreasonable risk of violence between prisoners in the Fresno County Jail.  The Court granted preliminary approval of the Settlement on July 21, 2015.  Plaintiffs, by and through their counsel, now respond to class-member objections and request final approval of the Consent Decree.  If the Court grants final approval, the Consent Decree will dispose of all class claims in the case.

The Court should grant final approval to the Consent Decree because, as the Court has already ruled, "the Consent Decree and Remedial Plan are the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation."  Order Adopting Findings and Recommendations in Full, ECF No. 132 at 2.  Further, the Consent Decree adequately addresses the class's claims for injunctive relief because it includes a detailed twenty-two page Remedial Plan that requires Defendant to remedy all of the deficiencies in healthcare, personal safety, and disability accommodations alleged in the class action complaint.  First Amended Class Action Complaint for Declaratory and Injunctive Relief, ECF No. 8.

The comments submitted by class members provide overwhelming support for the need to settle the case and provide timely relief to address the systemic inadequacies in the health care system, safety and security practices, and accommodations for prisoners with disabilities.  Less than one percent of the class members filed objections to the Consent Decree, and the majority of those objections allege problems with healthcare and violence that will be directly addressed by the Remedial Plan.

The objecting class members have presented no evidence demonstrating that the Consent Decree is not the product of good-faith, arm's-length negotiations.  There is no evidence that the Consent Decree will fail to achieve the primary objectives of the class

claims for injunctive relief – the delivery of constitutionally adequate healthcare, reasonable accommodations for prisoners with disabilities, and reduced violence between prisoners. Moreover, Plaintiffs' counsel will vigorously enforce the terms of the Consent Decree. The Court should therefore grant final approval to the Stipulated Settlement.

**BACKGROUND**

Plaintiffs are prisoners who are or have been incarcerated in the Fresno County Jail and a class consisting of all prisoners who are now, or will in the future be, incarcerated in the Fresno County Jail (Jail). Defendant is the County of Fresno, which is responsible for the operation of the Jail.

This action was filed on December 13, 2011. The First Amended Complaint ("Complaint") was filed on January 25, 2012. The Complaint alleged that the conditions in the Jail violated the constitutional and statutory rights of all prisoners who were or will be housed in the Jail. Specifically, the Complaint alleged that the Jail does not provide prisoners with access to adequate medical, mental health and dental care in violation of the Eighth and Fourteenth Amendments; prisoners are not reasonably protected from injury and violence from other prisoners in violation of the Eighth and Fourteenth Amendments; and that prisoners are not provided with reasonable accommodations for their disabilities in violation of the Americans with Disabilities Act and section 504 of the Rehabilitation Act.

On June 1, 2012, Defendant filed its answer to the amended complaint denying the material allegations and asserting affirmative defenses. The parties thereafter began class certification discovery. The parties subsequently agreed to suspend discovery for the purpose of settlement negotiations. On February 21, 2013, the parties agreed to a process whereby experts agreeable to both parties would inspect the Jail and issue reports and recommendations. Pursuant to that agreement, experts inspected the jail and provided the parties with their reports and recommendations. Based on those recommendations, the parties engaged in extensive settlement negotiations. In May 2015, the parties executed the proposed Consent Decree.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

On July 21, 2015, the Court granted the parties' joint motion seeking preliminary approval of the Consent Decree, and found that "the Consent Decree and Remedial Plan are the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." ECF No. 132 at 2. The order set a hearing regarding final approval of the Consent Decree for September 28, 2015, and ordered Defendant to post a Class Notice in the Jail.

In compliance with the Court's order, Defendants posted the Court-approved Class Notice concerning the proposed class-action in all of the housing units where class members reside. Decl. Gattie Re Posting Notice of Proposed Class Action Settlement and Provision of Documents as Ordered by Judge O'Neill, ECF No. 152. They also distributed copies of the Consent Decree, Remedial Plan, and Plaintiffs' Motion for Attorney's Fees to prisoners who completed an inmate request form requesting the documents from the Inmate Programs Manager. *Id.*

The Class Notice described the key terms in the Consent Decree and the proposed agreement regarding attorneys' fees, and advised class members the Court will consider submitted written comments when deciding whether to approve the settlement. Decl. of Specter in Support of Motion of Preliminary Approval of Settlement, ECF. 112-1, Ex. 2.

To date, 27 prisoners have filed comments with the Court. Some of those comments, which are addressed further below, oppose the Consent Decree, and the remainder offer neither support nor opposition to the Consent Decree.

**SUMMARY OF KEY PROPOSED SETTLEMENT TERMS**

The following are some of the key terms of the Consent Decree:

1. Based on the reports of the subject matter experts, the parties have agreed on a detailed Remedial Plan that Defendant will be responsible for implementing. The Remedial Plan provisions cover all the substantive areas in dispute: health care, personal safety, and disability discrimination. The twenty-two page Remedial Plan is attached to the Consent Decree as Appendix A. Among many other things, it requires the County to

ensure that (1) prisoners with chronic illnesses continue to receive necessary medications, (2) pregnant inmates receive timely and appropriate prenatal care, postpartum care, counseling, and specialized obstetrical services when indicated, (3) there are sufficient numbers of dental staff to provide timely access to adequate dental care, (4) mental health clinical decisions, diagnoses, and treatment plans shall only be made by licensed mental health clinicians, (5) continuity of mental health care will be provided from admission to transfer or discharge from the facility, (6) psychiatric medications, including but not limited to antipsychotic medications, shall be prescribed to prisoners with mental illness in accord with nationally accepted professional standards for the treatment of serious mental illness, (7) mental health clinicians shall complete a comprehensive suicide risk assessment form for all prisoners who display signs of suicide risk to determine if the inmate presents a low, moderate, or high risk of suicide, (8) for prisoners with serious mental illness who are housed in unit 2D, correctional and mental health staff will ensure those inmates are offered to be taken out of their cells for recreation a minimum of 7 hours per week and mental health treatment will be offered 3 times per week, (9) prisoners with disabilities will be housed in the most integrated and appropriate housing possible, based on their disabilities, and (10) a staffing plan will be designed to reduce prisoner-on-prisoner violence in the Jail, which includes the hiring of 127 new correctional officers.

2. Plaintiffs' counsel will be responsible for monitoring compliance with the Consent Decree and the Remedial Plan. Plaintiffs' counsel will be able to inspect the Jail twice per year and the subject matter experts will prepare a report during the first year of monitoring and upon request after the first year. In the event of a dispute, the parties have agreed on an informal dispute resolution process, and the Court will retain jurisdiction to entertain motions to enforce compliance if the dispute resolution process fails.

3. The County has agreed to pay Plaintiffs' counsel $900,000 for merits fees and expenses and $40,000 per year for monitoring fees and expenses.

4

# ANALYSIS

## I. THE STIPULATED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). And the Ninth Circuit has repeatedly recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in the context of "complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

In reviewing proposed class-action settlement agreements, there is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. *Harris v. Vector Mktg. Corp.*, No. 08–cv–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Other factors courts consider in assessing a settlement proposal include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). The district court must explore these factors comprehensively to satisfy appellate review, but "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.

"[T]he court's intrusion upon what is otherwise a private consensual agreement

1  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach
2  a reasoned judgment that the agreement is not the product of fraud or overreaching by, or
3  collusion between, the negotiating parties, and that the settlement, taken as a whole, is
4  fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.  Thus, a
5  district court's decision to approve a class-action settlement may be reversed "only upon a
6  strong showing that the district court's decision was a clear abuse of discretion." *Id.*

7  Here, the Court has already found that the Consent Decree was the product of an
8  arm's-length negotiation by Plaintiffs' counsel.  (ECF No. 132 at 2.)  Additionally, the
9  Court found that the Consent Decree was the result of "serious, informed, and non-
10 collusive negotiations between experienced and knowledgeable counsel who have actively
11 prosecuted and defended this litigation." *Id.*  Thus, the Consent Decree is entitled to a
12 presumption of fairness. *Harris*, 2011 WL 1627973, at *8.

13 The Court should grant the Consent Decree final approval because it provides
14 substantial equitable relief to class members.  Defendant has agreed to settlement terms
15 that directly address the class claims in this case, including the delivery of constitutionally
16 adequate healthcare, reasonable accommodations for prisoners with disabilities, and a
17 significant increase in the number of correctional officers to help reduce violence between
18 inmates. ECF No. 112-1, Ex. 1, Appendix A ("Remedial Plan").  The settlement was
19 reached after two years of negotiations between the parties, who were zealously
20 represented by their experienced counsel throughout this litigation.  ECF No. 113,
21 Declaration of Donald Specter In Support of Plaintiffs' Motion for Attorneys' Fees and
22 Expenses at ¶¶ 2-3.

23 The settlement was also reached after joint experts found systemic deficiencies in
24 Defendant's policies and practices including understaffing the Jail with correctional
25 officers and healthcare providers, prescribing prisoners with mental illness nonstandard
26 medications, and housing prisoners with disabilities in inaccessible dorms and cells. ECF
27 No. 124 at 000056 (correctional officer staffing), 000006 (medical provider staffing),
28 000038 (prescription practices), 000067 (housing for prisoners with disabilities).  The

joint experts' findings about systemic deficiencies in healthcare, disability accommodations, and correctional officer staffing demonstrate the strength of the class claims in this case.

Further, despite the joint experts' findings, Plaintiffs face substantial burdens in demonstrating a current and ongoing violation of prisoners' constitutional rights on a system-wide basis. And proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter. Given the relief achieved and the risks and costs involved in further litigation, the negotiated settlement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be granted final approved. *See* Fed. R. Civ. Pro. 23(e)(2).

## II. NONE OF THE COMMENTS REFUTE THE PRESUMPTION THAT THE STIPULATED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

When determining whether a settlement is fair under Rule 23(a), the Court may also consider the response of class members after they have been given proper notice and the opportunity to comment on the proposed settlement. *Hanlon,* 150 F.3d at 1026. The Court is required to "give a reasoned response to all non-frivolous objections" raised by class members. *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).

Defendant had placed copies of the Court-approved Class Notice in all housing units by August 7, 2015, pursuant to the Court's Order. ECF No. 152, ECF No. 132. Copies of the Consent Decree, Remedial Plan, and Plaintiffs' unopposed motion for attorneys' fees were also distributed to all prisoners who completed an inmate request form requesting these documents from the Inmate Programs Manager. *Id.* Thus, Defendant fully complied with the Court's order regarding the provision of notice to the class. ECF No. 132 at 5. The posting of the Class Notice and the distribution of the settlement materials were well-calculated to alert all interested class members to the existence of the lawsuit, the nature of the allegations and claims, the terms of the proposed

7

settlement, and their opportunity to file comments concerning the Consent Decree with the Court. And class members had 30 days—from August 7, 2015, through September 8, 2015—to file comments with the Court.

Of the approximately 2,800 prisoners in the Jail, only 27 filed comments with the Court. Sixteen of the class members only detailed the prisoners' individual problems with the health care system or described prisoner-on-prisoner violence, or were regarding unrelated issues such as their access to the law library or their criminal case, and did not provide substantive comments on the terms of the Consent Decree or Remedial Plan.[1] The remainder of the comments focused on the substance of the Consent Decree or Remedial Plan.

**A. Objections About the Scope of the Consent Decree and Remedial Plan**

Seven class members expressed their belief that the settlement terms do not go far enough to address the deficiencies identified in the case. ECF Nos. 133, 139, 142, 146, 156, ECF 163, 164. However, as the Ninth Circuit has observed, this alone is not a basis for rejecting a settlement:

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable, or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.

*Hanlon,* 150 F.3d at 1027.

Shaun Gonzales, who is no longer in the Jail, commented that the settlement should specifically address CPAP machines for prisoners with sleep apnea. ECF No. 133. While the Remedial Plan does not explicity address CPAP machines, Section I.H.2. of the Plan requires that the chronic disease management program conforms to

---

[1] ECF Nos. 134, 135, 136, 137, 138, 140, 141, 143, 144, 145, 147, 148, 149, 150, 151, 153, 155, 157, 159, 160, 161, 165, 167, 168, 169

8

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

"contemporary standards of care such as the National Health Lung and Blood Institute." Remedial Plan at 7. According to the National Health Lung and Blood Institute, sleep apnea is a chronic condition that is commonly treated with CPAP machines.[2] Thus, the Remedial Plan requires that a CPAP machine be prescribed when it is necessary to conform with contemporary standards of care. Similarly, Benjamin Goss's comment regarding the adequacy of medical diets (ECF No. 156) is addressed by Section I.H.2. because such a diet much be provided as a part of chronic disease management program when it is necessary to conform with contemporary standards of care (e.g., to manage diabetes or kidney disease).

Benjamin Goss also commented that the Remedial Plan does not adequately address extreme temperature conditions in the South Annex Jail or medical diets. ECF No. 156. Similarly, Glen Champ commented that triple bunks should be removed from the Jail. ECF No. 142. But this case does not challenge the temperature, crowding, or other general conditions of the Jail. Nonetheless, the Remedial Plan requires Defendant to consider closing the "antiquated" South Annex Jail "as soon as practicable," and to monitor temperatures in that facility to ensure that prisoners prescribed psychotropic medications are not at risk of harm from extreme temperatures. Remedial Plan at 18, 4.

Jared Ward commented that the Remedial Plan does not adequately address training and discipline for correctional officers who engage in misconduct against prisoners with mental illness and other disabilities. ECF No. 139 at 4 - 6. However, the Remedial Plan specifically requires training for correctional staff "on how to recognize symptoms of mental illness and respond appropriately," and contains several provisions regarding documentation, training investigation, and supervisory review of use of force incidents. Remedial Plan at 19, 20.

Jared Ward also objected to the Remedial Plan because it does not specifically

---

[2] National Heart, Lung, and Blood Institute, How is Sleep Apnea Treated?, http://www.nhlbi.nih.gov/health/health-topics/topics/sleepapnea/treatment (last accessed 9/18/15).

9

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

address conditions in Unit 4F of the Main Jail, which are substantially similar to conditions in the housing units addressed in Section II.G. of the Remedial Plan. The parties agree that Section II.G. of the Remedial Plan should include Unit 4F, as well as any other locked down administrative segregation or disciplinary housing units in the Main Jail, and have revised the Remedial Plan accordingly. Decl. of Knapp in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement at ¶ 3.

Daniel Trebas objected because he believes there should be a more definite timeline for hiring the additional 127 correctional officers required in Section IV.A.1. of the Remedial Plan. ECF No. 146 at 8-9. Similarly, Gary Thompson objected because he believes there should be specific timeframes for certain medical services. ECF No. 163. However, Plaintiffs believe the terms of the Remedial Plan regarding timeframes and timelines should be sufficient with good faith efforts by the County. And if the County fails to make good faith efforts, the Consent Decree provides this Court with jurisdiction to enter additional orders to ensure compliance.

Gary Thompson also objected because because he believes the Remedial Plan should define terms such as "adequate," "acuity," "extenuating circumstances," "emergent," and "timely." The terms of the Remedial Plan are based on nationally accepted correctional standards, and were intentionally drafted to provide jail officials the discretion and leeway they need to safely operate the jail and to tailor treatment decisions for prisoners based on their individual circumstances.

Lastly, Joseph Varella objected to the Remedial Plan because it does not include any "punishments, sanctions, or penalties" if Defendant fails to comply. ECF No. 164. However, this Court retains jurisdiction to enforce the terms of the Consent Decree during the monitoring period, and may order relief as it deems necessary and appropriate.

**B. Objections to Specific Provisions of the Remedial Plan**

Two class members objected to three specific provisions of the Remedial Plan, but did not present evidence that the class action settlement is unfair, inadequate, or

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1  unreasonable.

2  Daniel Trebas objected to Section I.L.1 of the Remedial Plan that provides, "The
3  County, through Corizon, shall implement an electronic health record for inmates within
4  the first year of Corizon's contract." ECF No. 146 at 7-8. He objects because the first
5  year of Corizon's contract has already expired, and he believes the County, and not
6  Corizon, should be required to implement the electronic health record within the first year
7  of the Consent Decree. *Id.* His concern seems to be based on speculation that the County
8  will end its contract with Corizon, or that Corizon will not timely implement an
9  electronic health record. This type of objection does not demonstrate that the settlement
10 agreement is unfair or inadequate, especially because Plaintiffs' counsel will actively
11 monitor and enforce compliance with the terms of the Remedial Plan, and the Consent
12 Decree includes a dispute resolution process to informally resolve any issues that arise in
13 Defendant's compliance with the Remedial Plan.

14 Daniel Trebas and Dustin Callison objected to Section III.B. of the Remedial Plan
15 because it allows jail physicians to make the determination of whether an assistive device
16 is medically necessary or reasonable. ECF No. 146 at 3-4, ECF No. 154 at 2. But
17 Section III.B.1. requires that prisoners must receive assistive devices to afford equal
18 access to programs, services, and activities, and Plaintiffs' counsel and the court experts
19 will actively monitor this provision. Remedial Plan at 16.

20 Daniel Trebas and Dustin Callison also objected to Section I.N.3. of the Remedial
21 Plan because it suggests that autopsies will not be performed when deaths are caused by
22 suicide or homicide. The parties agree that the language in this provision is erroneous,
23 and accordingly have agreed to amend Section I.N.3. of the Remedial Plan to state,
24 "Autopsies shall be performed for all deaths, except for where the cause of death can be
25 conclusively determined from the facts known before the death." Decl. Knapp at ¶ 3.

26

27

28

11

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

### C. One Objection Regarding the Applicable Constitutional Standard

Mike Starrett filed an objection based on his belief that the Eighth Amendment's prohibition on cruel and unusual punishment, as it relates to medical care, should not be applied to pretrial detainees. ECF No. 162. Mr. Starrett is correct that pretrial detainees' constitutional claims should be analyzed under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 528 (1979). However, the class action complaint included both Eighth and Fourteenth Amendment claims to cover both sentenced and unsentenced prisoners. Morever, it is well-established that courts should analyze whether medical care is constitutionally adequate under the same "deliberate indifference" standard for both pretrial detainees and sentenced prisoners. *Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1241 (9th Cir. 2010) (The Ninth Circuit has "long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs … under a 'deliberate indifference' standard."); *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment ... we apply the same standards."); *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1461 & n. 2 (9th Cir.1988) (explaining that "the fourteenth amendment due process rights of pretrial detainees are analogized to those of prisoners under the eighth amendment"), *vacated on other grounds,* 490 U.S. 1087 (1989), *opinion reinstated,* 886 F.2d 235 (9th Cir.1989).

### D. Three Objections Regarding Damages for Class Members, and Two Related Requests to Opt Out of the Class.

Daniel Trebas and Dustin Callison "rejected inclusion" in the plaintiff class because they are pursuing individual actions for money damages, and because Mr. Trebas believes he is not a "prisoner" as he is "awaiting civil commitment proceedings." ECF No. 146 at 1-3, ECF No. 154 at 1. Jared Ward similarly objected to the settlement

12

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

because it does not include damages for class members.  ECF No. 139 at 3.  But in this case, the class only sought declaratory and injunctive relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures.  There is no right to opt out of a class action brought pursuant to this Rule, "although a court in its discretion may provide for an opt-out."  *Crawford v. Honig*, 37 F.3d 485, 487 n. 2 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995).  Here, there is no need for prisoners to opt out because they are not barred from seeking individual damage claims.  *Hiser v. Franklin,* 94 F.3d 1287, 1291 (9th Cir. 1996) ("[T]he general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events.")  Moreover, the Consent Decree requires systemic changes to the Jail's policies, procedures, and operations, and thus, by its very nature, necessarily impacts all people incarcerated in the Jail.

### E. One Objection to the Fairness of Attorneys' Fees and Costs

Jared Ward objected to the Consent Decree because he believes Plaintiffs' counsel were entitled to more money than they are receiving.  ECF No. 139 at 3.  But Plaintiffs' counsel believes the agreed-upon attorneys' fees and costs are fair and reasonable.

### III. PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE GRANTED.

Defendant has agreed to pay Plaintiffs' attorneys' fees and out of pocket expenses in the amount of $900,000.  This amount – which reimburses Plaintiffs' counsel for some but not all of their actual hours spent and out-of-pocket expenses – is fair and reasonable in light of the extraordinary results obtained through this litigation and protracted settlement negotiations.  With the exception of one class member believing this amount is not enough, there are have been no objections to the amount of $900,000.  Accordingly, the Court should grant Plaintiffs' Motion for Attorneys' Fees and Expenses pursuant to Federal Rule of Civil Procedures 23(h).  ECF No. 113.

### IV. CONCLUSION

As the Court has already ruled, the Consent Decree is the produce of arm's-length,

13

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. Thus, it is entitled to a presumption of fairness. Further, the few objecting comments filed by class members fail to demonstrate that the Consent Decree does not fairly, reasonably, and adequately resolve the class's claims for injunctive relief. Accordingly, Plaintiffs and Defendants request that the Court grant final approval of the Consent Decree and Plaintiffs' Motion for Atttorneys' Fees and Costs.

Dated:  September 21, 2015

Respectfully submitted,

PRISON LAW OFFICE

/s/ Kelly Knapp

Kelly Knapp

*Attorneys for Plaintiff Quentin Hall, Shaun Gonzales, Robert Merryman, Dawn Singh, Brian Murphy, and the Plaintiff Class*