UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN HALL, SHAWN GONZALES, ROBERT MERRYMAN, DAWN SINGH, and BRIAN MURPHY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF FRESNO,<br>Defendant. | No. 1:11-cv-02047-LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>(Docs. 113 and 170) |

Plaintiffs Quentin Hall, Shawn Gonzales, Robert Merryman, Dawn Singh, and Brian Murphy, on behalf of themselves and all others similarly situated seek final approval of a class settlement reached with Defendant, the County of Fresno. (Doc. 170). In addition, Plaintiffs seek an award of attorneys' fees and costs. (Doc. 113). The Court heard oral argument on September 28, 2015. (Doc. 174). Counsel Donald Specter and Kelly Knapp appeared in person for Plaintiffs. Counsel Michael Woods appeared in person for the Defendant. Having carefully considered the parties' submissions, oral argument, and the entire record in this case, the Court recommends Plaintiffs' Motion for Final Approval and Attorneys' Fees be GRANTED. (Docs. 113, 170).

**BACKGROUND**

On December 13, 2011, Plaintiffs, individually and acting for the interests of the general population of the Fresno County Jail, initiated this action. (Doc. 1). Plaintiffs are prisoners who are or have been incarcerated in the Fresno County Jail. The class consists of all prisoners who

are now, or will in the future be, incarcerated in the Fresno County Jail ("Jail"). Defendant is the County of Fresno, which is responsible for the operation of the Jail.

The operative complaint in this action is the First Amended Complaint filed on January 25, 2012. (Doc. 8). The Complaint alleged that the conditions in the Jail violated the constitutional and statutory rights of all prisoners who were or will be housed in the Jail. Specifically, the Complaint alleged that the Jail does not provide prisoners with access to adequate medical, mental health and dental care in violation of the Eighth and Fourteenth Amendments; prisoners are not reasonably protected from injury and violence from other prisoners in violation of the Eighth and Fourteenth Amendments; and that prisoners are not provided with reasonable accommodations for their disabilities in violation of the Americans with Disabilities Act and section 504 of the Rehabilitation Act. Compl. ¶ 23.

On June 1, 2012, Defendant filed its answer to the amended complaint denying the material allegations and asserting affirmative defenses. The parties thereafter began class certification discovery. The parties subsequently agreed to suspend discovery for the purpose of settlement negotiations. On February 21, 2013, the parties agreed to a process whereby experts agreeable to both parties would inspect the Jail and issue reports and recommendations. Pursuant to that agreement, experts inspected the jail and provided the parties with their reports and recommendations. Based on those recommendations, the parties engaged in extensive settlement negotiations. In multiple status conferences, this Court provided guidance in the parties' settlement negotiations on no less than fifteen occasions. (Docs. 65, 69, 71, 73, 76, 79, 82, 86, 89, 92, 96, 100, 103, 106, 109, 111)

In May 2015, the parties executed the proposed Consent Decree and the parties filed a joint motion seeking preliminary approval of the Consent Decree, which the Court granted on July 21, 2015. (Docs. 112, 129, 132). The parties now seek final approval of their class action settlement.

## LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The role of the

2

district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. *Lane v. Facebook, Inc*., 696 F.3d 811, 818-19 (9th Cir. 2012) *reh'g denied* 709 F.3d 791 (9th Cir. 2013).

Review of the proposed settlement of the parties proceeds in two phases. *True v. American Honda Motor Co*., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. *Id.* at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. *True*, 749 F.Supp.2d at 1063.

## DISCUSSION

**A. Terms of Settlement**

The parties agreed to a Consent Decree granting injunctive and declaratory relief to the Class without providing for a monetary award to the Class. Declaration of Kelly Knapp ("Remedial Plan"), Attach. 1, (Doc. 170-1). Under the terms of the Consent Decree, the parties have agreed to a detailed Remedial Plan that Defendant will be responsible for implementing subject to monitoring by Plaintiffs' counsel. The Remedial Plan provisions cover the substantive areas in dispute: health care, personal safety, and disability discrimination.[1] *Id.* Plaintiffs' counsel

---

[1] Specifically, the Remedial Plan requires Defendant to ensure that: (1) prisoners with chronic illnesses continue to receive necessary medications, (2) pregnant inmates receive timely and appropriate prenatal care, postpartum care, counseling, and specialized obstetrical services when indicated, (3) there are sufficient numbers of dental staff to provide timely access to adequate dental care, (4) mental health clinical decisions, diagnoses, and treatment plans shall only be made by licensed mental health clinicians, (5) continuity of mental health care will be provided from admission to transfer or discharge from the facility, (6) psychiatric medications, including but not limited to antipsychotic medications, shall be prescribed to prisoners with mental illness in accord with nationally accepted professional standards for the treatment of serious mental illness, (7) mental health clinicians shall complete a comprehensive suicide risk assessment form for all prisoners who display signs of suicide risk to determine if the inmate presents a low, moderate, or high risk of suicide, (8) for prisoners with serious mental illness who are housed

will be responsible for monitoring compliance with the Consent Decree and the Remedial Plan. Plaintiffs' counsel will be able to inspect the Jail twice per year and the subject matter experts will prepare a report during the first year of monitoring and upon request after the first year.

Under the Consent Decree, Class counsel will receive $900,000.00 for merits fees and for costs incurred during litigation. The agreement also specifies that Defendant will pay $40,000.00 per year for monitoring fees and expenses. Declaration of Donald Specter ("Consent Decree"), Doc. 112-1, Ex. 1 ¶ 21. In the event of a dispute, the parties have agreed on an informal dispute resolution process, and the Court will retain jurisdiction to entertain motions to enforce compliance if the dispute resolution process fails.

**B.    Notice to Class Members**

The Court finds that the notice to the settlement class, as described in the July 1, 2015 order preliminarily approving the class settlement, provided the best practicable notice to the class members and satisfied the procedures of Due Process. The Class Notice described the key terms in the Consent Decree and the proposed agreement regarding attorneys' fees, and advised class members the Court will consider submitted written comments when deciding whether to approve the settlement. Declaration of Donald Specter ("Specter Decl."), Doc. 112-170-1, Ex. 2.

Defendant posted the Notice in English and Spanish in all housing units in such a manner as to make the notice visible to all prisoners. The Notice was also hand delivered to each prisoner in restricted housing and housing units on lockdown. Defendant also provided a copy of the Court's Order granting preliminary approval of the class settlement, the full Consent Decree, the Remedial Plan, and Plaintiffs' motion for attorney fees to all prisoners who completed an inmate request form requesting these documents. Declaration of Tom Gattie ("Gattie Decl."), Doc. 152. The Court finds that the procedures employed were adequate to satisfy Due Process.

///

---

in unit 2D, correctional and mental health staff will ensure those inmates are offered to be taken out of their cells for recreation a minimum of 7 hours per week and mental health treatment will be offered 3 times per week, (9) prisoners with disabilities will be housed in the most integrated and appropriate housing possible, based on their disabilities, and (10) a staffing plan will be designed to reduce prisoner-on-prisoner violence in the Jail, which includes the hiring of 127 new correctional officers. (Doc. 170 at 5-6).

### C. Class Certification

Based on the showing made by the parties in support of the Motion for Preliminary Approval and the Motion for Final Approval and as discussed more fully in the Preliminary Approval Order, the Court finds the parties have met their burden as to the prerequisites for class certification set forth in Rule 23(a) and (b)(2).

Specifically, the Class includes an estimated 2,700 inmates at the Jail, and is therefore so numerous that joinder is impracticable. (Doc. 129 at 4). As to commonality, the Class presents common questions of law and fact arising out of Defendant's system-wide practices that present a risk of harm and discriminatory treatment to all prisoners in the Fresno jails. The typicality requirement is fulfilled because Plaintiffs' claims arise from the same policies and procedures similarly impacting all class members. The adequacy requirement is met because Plaintiffs will fairly and adequately represent the interests of the Class, and the Prison Law Office is experienced class counsel knowledgeable in the applicable areas of the law.

As to the requirements of Rule 23(b)(2), the widespread injunctive relief sought is appropriate for the Class as a whole, because all Class Members face the same policies and practices that risk harm and discriminatory treatment to the class. (Doc. 129 at 4).

### D. Settlement Approval Factors Support the Consent Decree

In determining whether or not the settlement is fair, reasonable, and adequate, courts balance several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

In evaluating a proposed settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Court "does not have the ability to delete, modify, or substitute certain provisions," and "[t]he settlement must stand or fall in its entirety."

5

*Id.* The question is not whether the settlement "could be prettier, smarter, or snazzier," but solely "whether it is fair, adequate, and free from collusion." *Id*. at 1027.

Here, the Consent Decree provides substantial equitable relief to class members. As discussed in the order granting preliminary approval, the Consent Decree was the product of an arm's-length negotiation by Plaintiffs' counsel. (Doc. 132 at 2). Additionally, the Court found that the Consent Decree was the result of "serious, informed, and noncollusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." *Id.* Thus, the Consent Decree is entitled to a presumption of fairness. *See e.g., Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. 2011). Defendant has agreed to settlement terms that directly address the class claims in this case, including the delivery of constitutionally adequate healthcare, reasonable accommodations for prisoners with disabilities, and a significant increase in the number of correctional officers to help reduce violence between inmates. Remedial Plan at 18, (Doc. 112-1). The settlement was reached, with extensive Court oversight, after two years of negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation. Specter Decl. at ¶¶ 2-3. The settlement was also reached after joint experts found systemic deficiencies in Defendant's policies and practices including understaffing the Jail with correctional officers and healthcare providers, prescribing nonstandard medications to prisoners with mental illness, and housing prisoners with disabilities in inaccessible dorms and cells. (Doc. 124).

Given the relief achieved and the risks and costs involved in further litigation, the negotiated settlement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues. *See* Fed. R. Civ. Pro. 23(e)(2). Further, considering there was arm's-length bargaining; extensive investigation and discovery by experienced counsel; and a small percentage of objectors, the Court concludes the settlement was presumptively fair, adequate and reasonable, and should be granted final approval. *Harris*, 2011 WL 1627973, at *8.

**E.     Class Members' Reaction to the Proposed Settlement**

Prior to the hearing on final approval, the Court received written objections to the settlement from twenty-nine objectors. The objections fall into two categories: (1) ten objectors

commented on the substance of the Consent Decree and/or Remedial Plan;[2] and (2) the remaining nineteen class members voiced individual problems with the current Jail health care system; described prisoner-on-prisoner violence, or detailed otherwise unrelated issues such as individual access to the law library or their criminal case, but did not provide substantive comments on the terms of the Consent Decree or Remedial Plan.[3]  Finding that the evidence presented supports approval of the settlement, the Court now considers whether the objections otherwise require disapproval of the class settlement.[4]

### 1. Objections on the Scope of the Consent Decree and Remedial Plan

Seven class members objected that the settlement terms do not go far enough to address the deficiencies identified by the parties' experts. (Docs. 133, 139, 142, 146, 156, 163, and 164). However, as the Ninth Circuit has observed, this alone is not a basis for rejecting a settlement:

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable, or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.

*Hanlon*, 150 F.3d at 1027.

Some of these objections include: (1) access to CPAP machines; (2) adequacy of medical diets; (3) temperature controls; (4) removing triple bunks; (5) training and discipline for officers who engage in misconduct against prisoners with mental health challenges or disabilities; (6) closing the antiquated south annex; (7) applying the remedial plan to Unit 4f of the Main Jail; (8) timeline of hiring an additional 127 correctional officers; and (9) the need for sanctions if Defendant fails to comply/implement the Remedial Plan.

---

[2] (Docs. 133, 139, 142, 146, 154, 156, 162, 163, 164).
[3] (Docs. 134, 135, 136, 137, 138, 140, 141, 143, 144, 145, 147, 148, 149, 150, 151, 153, 155, 157, 159, 160, 161, 165, 166, 167, 168, 169, 172, 173).
[4] In cases of this type, it is not unusual to have a large number of objections, nor is it unusual for a court to approve a settlement over such objections. *See, e.g., Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) (approving settlement over objections of more than 40% of class members and 23 out of 27 named plaintiffs); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) (approving settlement related to prison conditions over objections of 457 class members); *Hawker v. Consovoy*, 198 F.R.D. 619, 628 (D.N.J. 2001) (approving prison conditions settlement over objections from 250 class members); *Pack v. Beyer*, No. 91-3709, 1995 U.S. Dist. LEXIS 19542, 1995 WL 775360, at *5 (D.N.J. Dec. 22, 1995) (approving prison conditions settlement over objection from 41% the class).

These objections are either implicitly addressed by the Remedial Plan (example: cpap machine/temp controls/diets) or counsel has amended the Remedial Plan to address the objection. The other objections can be addressed through the ongoing monitoring of the Remedial Plan once the Remedial Plan is implemented. Considering these objections, the Court finds that the settlement is fair, reasonable, adequate, and specifically directed at resolving the problems raised by these and other inmates. The Consent Decree and Remedial Plan will provide Plaintiffs with improved health treatment to which they are entitled.

### 2. Objections to Specific Remedial Plan Provisions

Inmates Daniel Trebas and Dustin Callison objected to three specific provisions of the Remedial Plan, but did not present evidence that the class action settlement is unfair, inadequate, or unreasonable. Areas addressed include: (1) electronic health records; (2) assistive devices; and (3) autopsies. (Docs. 146, 154).

For example, Dustin Callison specifically objected to language in the Remedial Plan that stated "autopsies shall be performed for all deaths, except for those caused by suicide or homicide." (Doc. 154 at 3). This objection resulted in a revision to the Remedial Plan. The Remedial Plan was revised to specify that autopsies will be performed for "all deaths where the cause of death cannot be conclusively determined." Remedial Plan ¶ 10. Objections as to the need for assistive devices and the creation of electronic health records can and will be addressed through monitoring after the settlement is approved. These objections do not weigh against approving the proposed Consent Decree

### 3. Objections Regarding the Applicable Constitutional Standard

Inmate Mike Starrett filed an objection based on his belief that the Eighth Amendment's prohibition on cruel and unusual punishment, as it relates to medical care, should not be applied to pretrial detainees. (Doc. 162). While Mr. Starrett is correct in part, the class action complaint was written broadly to include both Eighth and Fourteenth Amendment claims to include both sentenced prisoners and pretrial detainees. In an effort to provide relief to all inmates, the Remedial Plan incorporates remedial measures regardless of an inmate's status as a pretrial detainee or convicted prisoner. For this reason, the Court does not find that this objection weighs

against approval of the settlement.

### 4. Objections Regarding Money Damages and Opting Out of Class

Inmates Daniel Trebas and Dustin Callison filed objections attempting to opt-out of the settlement class because they are pursuing individual actions that will be filed at a later date. Jared Ward also complains that the settlement does not provide money damages to the class. (Doc. 139).

These objections do not negate the fairness of the settlement as there is no need for inmates to opt-out of the class because they are not barred from seeking individual damage claims. *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) ("[T]he general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events"). Moreover, the Consent Decree requires systemic changes to the Jail's policies, procedures, and operations, and thus, by its very nature, necessarily impacts all people incarcerated in the Jail. Further, objections to the lack of money damages are meritless because this is a class action certified pursuant to Rule 23(b)(2) that seeks only injunctive relief. Therefore, the absence of an award of money damages is neither unfair nor unreasonable.

### 5. Additional Objections

Of the twenty-nine total objectors, nineteen individuals submitted comments that the Court will liberally construe as objections. Those class members are: Jimmy Buford (Doc. 134); Matthew Messick (Doc. 135); Juan Alvardo (Doc. 136); Ronnie Azevedo (Docs. 138, 150); Robert L. Morris (Doc. 140); Elaine Villareal (Docs. 141, 147, 151, 169); David Edwards Estrada (Docs. 143, 165); Rory D. Jordan (Doc. 144); Georgina McGee (Doc. 145); Kelly Lynn McKinney (Docs. 148, 151); Nyree Dawn Bernard (Doc. 149); Dennis Reynolds (Doc. 153), Asatour Nagapetin (Doc. 157); Jezrell Crawford (Docs. 159, 161, 168, 173); Calvin Simpson (Doc. 160); Martin Ganoa (Doc. 167); Gary Thompson (Doc. 163); and Gregory Ell Sheehee (Doc. 172).[5] Although some of the objections are difficult to understand, the Court thoroughly

---

[5] The name of one objector is illegible and is therefore not included in this list. (Doc. 137).

reviewed each objection.[6]

Specifically, the bulk of these objections are more accurately deemed as criticism of the current medical care system in place at the Jail. The following are examples of objections from inmates that do not relate to the fairness and adequacy of the Consent Decree itself: (1) inmate Matthew Messick claims that the hygiene standards at the Jail are inadequate and he requests additional recreational activities and more time in the yard (Doc. 135); (2) inmates Elaine Villareal, Kelly McKinney, and Georgina McKee complain of the presence of black mold in and around the Jail (Docs. 145, 148, 169); and (3) multiple inmates complain about delayed response times for medical grievance forms (Docs. 135, 138, 140, 143, 144, 145, 155, 157, 165, 168, 169, 172).

After having carefully reviewed the objections, the Court characterizes them, in their totality, as complaining about the current conditions at the Jail rather than any disagreement with the terms of the Consent Decree and Remedial Plan. Many objections are the result of a fundamental misunderstanding of the underlying purpose of the class action, a lack of knowledge of the ramifications if the settlement is not approved, and unrealistic or overly optimistic expectations. The Consent Decree and Remedial Plan require systemic changes in the Jail's policies, procedures, and operations and thus, upon implementation, should address the individual concerns raised by objectors. Regardless, when implemented, these types of concerns would fall within the scope of the ongoing monitoring activity contemplated by the Consent Decree. Accordingly, these objections fail to convince the Court that the Consent Decree is unfair or unreasonable.

**F.     Attorneys' Fees**

The Consent Decree also provides that Defendant agrees to pay Plaintiffs' class counsel, the Prison Law Office, $900,000.00 in attorney's fees and expenses and $40,000.00 per year for

---

[6] Certain objections are wholly unrelated to the Consent Decree and address issues which are either frivolous or nonsensical. (Docs. 149, 159, 161, 168). For example, Inmate Nyree Brown details a list of complaints about the Fresno high-speed rail system, Barack Obama's presidency, and she argues that she is "the only person who aint gay in America." (Doc. 149 at 17). Inmate Jezrell Crawford details plans to sell children's programs such as the "Bubble Guppies" to Valley PBS kids. (Doc. 159). The Court does not regard such comments as proper objections to the Consent Decree, and, consequently, will not address them.

monitoring fees and expenses as part of the settlement. (Doc. 113). Plaintiffs' Counsel represents that this amount–which reimburses Plaintiffs' counsel for some but not all of their actual hours spent and $50,000 in out-of-pocket expenses—is fair and reasonable in light of the extraordinary results obtained through this litigation and protracted and complex settlement negotiations.

Where a class action settlement results in injunctive relief, the court must ensure that the amount of the requested attorneys' fees does not result in "'less injunctive relief for the class than could otherwise have been obtained.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In a Section 1983 action, like this one, the Court may determine that a prevailing party is entitled to attorney's fees. *See Hanlon,* 150 F.3d 1029; 42 U.S.C. § 1988. A reasonable fee is generally calculated by application of the lodestar method, which requires multiplying the hours reasonably expended by a reasonable hourly rate. *See City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Counsel calculated their attorneys' fees using the lodestar method; that is, Plaintiffs' counsel kept contemporaneous time records that detailed all work completed, and calculated the requested award by multiplying the number of hours actually worked by a reasonable hourly rate. Specter Decl., ¶ 8. In setting a reasonable hourly rate, Plaintiffs' counsel agreed to limit their rate to $211.50 based on the limits set out in the PLRA for payment of court-appointed counsel. *Vllebb v. Ada Cnty*. 285 F.3d 829, 839 (9th Cir. 2002). Attorneys' fees were then calculated by applying an hourly rate of $211.50 per hour to a number of hours far below the number of actual hours worked. Specter Decl. ¶ 8. While the rate of $211.50 is slightly higher than fees allowable under the PLRA, the Court finds that the rate requested by the attorneys here is lower than the overall market rate for attorneys of similar abilities and experience in this District. *See Sanchez v. Frito-Lay, Inc*., 2015 U.S. Dist. LEXIS 102771 (E.D. Cal. Aug. 5, 2015) (reviewing billing rates for the Fresno Division and concluding that a rate $350 per hour rate was reasonable in a class action).

The Court also notes that this rate is particularly reasonable in light of the extensive litigation involved in this case. A year after Plaintiffs initiated this action; the Court provided guidance over settlement negotiations in fifteen or more status conferences. Accordingly, the

11

Court has firsthand knowledge that in order to further settlement efforts, counsel conducted complex discovery, interviewed and corresponded with hundreds of prisoners, reviewed and analyzed thousands of pages of healthcare records, inspected jail facilities, worked with neutral experts, and met and conferred with opposing counsel and the County to participate in negotiations. Thus, after a careful review of the record, and in considering the Court's extensive involvement, the Court concludes that the proportion between the fee award, the hours worked, and the benefit obtained for the class is *per se* reasonable in this nearly four year old case.

Moreover, with the exception of one class member believing the fee amount is not enough (Doc. 139), there have been no objections to the $900,000.00 attorneys' fee amount. Accordingly, the Court recommends that Plaintiffs' Motion for Attorneys' Fees and Expenses pursuant to Federal Rule of Civil Procedures 23(h) be GRANTED. (Doc. 113).

## **CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Plaintiffs' Motion for Final Approval of the Consent Decree be GRANTED;

2.  The terms of the proposed Consent Decree be found to be fair, adequate and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

3.  Plaintiffs' request for certification of the Settlement Class be GRANTED and the class defined as all prisoners who are now, or will in the future be, confined in the Fresno County Jail be certified for settlement purposes;

4.  For purposes of the settlement, the above-defined settlement class be found to meet all of the requirements of Rule 23(a) and 23(b)(2).

5.  The notice that has been provided to the settlement class members, as well as the means by which it was provided constitutes the best notice practicable under the circumstances and is in full compliance with the United States Constitution and the requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure. Further, that such notice fully and accurately informed settlement class members of all material elements of the lawsuit and proposed class action settlement, and each member's right and opportunity to object to the proposed class action settlement;

      6.     Reasonable attorney fees and expenses in the amount of $900,000.00 and $40,000.00 per year for compliance monitoring be awarded to Class Counsel the Prison Law Office;

      7.     That the Court enter the proposed Consent Decree (Doc. 112-1) as follows:

> The Court recognizes that the Plaintiffs allege various violations of Federal law and the Defendant County of Fresno denies those allegations. Having reviewed the reports of the joint experts, the Court hereby finds that the remedy set forth herein is narrowly drawn, extends no further than necessary to correct the violation of Federal constitutional and statutory rights of the Plaintiffs' class, and is the least intrusive means necessary to correct the violation of federal rights. Therefore, and good cause appearing, the Court approves the Consent Decree, and orders the parties to comply with all its terms, and orders Defendant to implement the Remedial Plan pursuant to the schedule set forth therein.

      8.     This action be dismissed with prejudice in accordance with the terms of the agreement; however, the Court shall retain continuing jurisdiction to interpret, implement and enforce the settlement, and all orders and judgment entered in connection therewith.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

**The parties are advised that if they do not object these Recommendations, each counsel shall file of a statement of non-opposition, as this will shorten the objection period and facilitate the adjudication of this motion by the District Judge.**

IT IS SO ORDERED.

    Dated:   **October 7, 2015**           /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE