UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN HALL, SHAWN GONZALES, ROBERT MERRYMAN, DAWN SINGH, and BRIAN MURPHY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF FRESNO,<br><br>Defendant. | Case No. 1:11-cv-2047-LJO-BAM<br><br>**ORDER DENYING DOMINIC HANNA'S MOTION TO INTERVENE AND UNSEAL COURT RECORDS**<br><br>**(Doc. 177)** |

Potential Intervenor Dominic Hanna ("Hanna") moves to intervene in this now closed proceeding between Plaintiffs Quentin Hall, *et al* and Defendant the County of Fresno pursuant to Federal Rule of Civil Procedure 24(b). Hanna's Motion to Intervene seeks to unseal three of four expert reports filed in this action. Hanna filed the instant motion on October 28, 2015, and shortly thereafter, the Court ordered supplemental briefing regarding the timeliness of the motion. On November 18, 2015, Hanna filed his supplemental briefing. (Doc. 184). Defendant County of Fresno filed an opposition to the motion on November 25, 2015. (Doc. 185). Pursuant to Local Rule 230(c), the Court took the matter under submission and vacated the hearing set for December 11, 2015. (Doc. 187). Having considered the moving, opposition, supplemental papers, and the entire file, Hanna's motion is DENIED for the reasons set forth below.

## BACKGROUND

This case is a putative class action regarding conditions at the Fresno County Jail ("Jail"). Plaintiffs are prisoners who are or have been incarcerated in the Fresno County Jail (collectively

"Hall parties"). The class consists of all prisoners who are now, or will in the future be, incarcerated in the Jail. Defendant is the County of Fresno, which is responsible for the operation of the Jail.

Plaintiffs' First Amended Complaint alleged that the conditions in the Jail violated the constitutional and statutory rights of all prisoners who were or will be housed in the Jail. Specifically, the Complaint alleged that the Jail does not provide prisoners with access to adequate medical, mental health and dental care in violation of the Eighth and Fourteenth Amendments; prisoners are not reasonably protected from injury and violence from other prisoners in violation of the Eighth and Fourteenth Amendments; and that prisoners are not provided with reasonable accommodations for their disabilities in violation of the Americans with Disabilities Act and section 504 of the Rehabilitation Act. FAC. ¶ 23.

On June 1, 2012, Defendant filed its answer to the amended complaint denying the material allegations and asserting affirmative defenses. The parties thereafter began class certification discovery. The parties subsequently agreed to suspend discovery for the purpose of settlement negotiations. On February 21, 2013, the parties agreed to a process whereby experts agreeable to both parties would inspect the Jail and issue reports and recommendations. Pursuant to that agreement, experts inspected the Jail and provided the parties with their reports and recommendations. Based on those recommendations, the parties engaged in extensive settlement negotiations, which included significant Court participation and management. Over a two-year period, in over fifteen status conferences, the Court provided guidance and supervision of the settlement negotiations and engaged the parties in settlement discussions. The discussions and negotiations generally centered on the experts' findings and remedial measures to address alleged deficiencies.

On May 28, 2015, after over two years of extensive settlement negotiations, the parties executed a proposed Consent Decree. Counsel for Plaintiffs sought preliminary Court approval of the Consent Decree and filed a Motion for Preliminary Approval indicating that the parties had reached a final settlement of all claims. (Doc. 112). On that same day, the parties jointly moved for an order directing the clerk to file under seal the expert reports prepared for the purpose of

settlement.  (Doc. 114).  Specifically, the parties requested to seal the expert reports of (1) Dr. Michael Puisis regarding Fresno County Jail's medical program, (2) Richard Hayward, Ph.D., regarding Fresno County Jail's mental health program, (3) David Rardin, regarding Fresno County Jail's Operations Review, and (4) Disability Rights California, regarding Fresno County Jail's ADA procedures and practices.  (Doc. 114).

On June 2, 2015, the Court issued a protective order, permitting the Hall parties, pursuant to Local Rule 141, to file "Confidential" documents under seal. (Doc. 119). On June 8, 2015, the Court permitted counsel to file under seal the four expert reports prepared for the parties during the course of their settlement negotiations.  (Doc. 123).  The Court's June 8, 2015 found compelling reasons to file the reports under seal.  (Doc. 123).

As a result of that sealing order, Hanna now seeks permissive intervention pursuant to Rule 24(b), for the limited purpose of unsealing three of the four expert reports.  Hanna contends the reports allegedly pertain to issues directly relevant to Hanna's civil rights action, *Hanna v. County of Fresno, et al.*, 1:14-cv-00142-LJO-SKO, concerning the conditions, policies and practices at the Fresno County Jail during the relevant time period in *Hall*. In *Hanna v. County of Fresno*, Hanna alleges he was booked into the Fresno County Jail on February 6, 2012, where within three days he attempted suicide twice causing him to be permanently disabled and immobilized. His complaint alleges that the individual and county defendants' mental health, medical health, construction and security operations, failed to provide and/or enforce adequate policies and practices for the protection and care of the mentally ill and inmates with suicidal histories and ideation. *See, Hanna*, (Doc. 39), Third Amended Complaint.

Prior to filing the motion to intervene, Hanna contacted counsel for the Hall Plaintiffs who stated that he "does not oppose [Hanna's] motion to intervene." *See* Declaration of Robert Navarro ("Navarro Decl.") ¶ 2, Doc. 177-1.  Defendant County of Fresno, however, opposes the Motion on three grounds: (1) Hanna's motion is untimely; (2) intervention is prejudicial to the County; and (3) compelling reasons exist to maintain the records under seal. Hanna responds that the motion is timely and compelling reasons do not exist to keep the expert reports under seal.

**LEGAL STANDARD**

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b) . . . ." *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999) *superseded in other respects by* Fed. R. Civ. P. 5(c). Rule 24(b) ordinarily requires the intervenor to show "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). However, where a nonparty proposes to intervene solely for the limited purpose of ensuring public access to court documents, no independent ground for jurisdiction is required. *Id.*

Ordinarily, there is a strong presumption that court records should be open to public inspection. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, the right is not absolute, and public access may be denied, for example, where the records involved contain sensitive business information, the release of which "might harm a litigant's competitive standing." *Id.* at 598. "[M]ost judicial records may be sealed only if the court finds 'compelling reasons.' However, a less exacting 'good cause' standard applies to . . . previously sealed discovery attached to a nondispositive motion." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (citations omitted) (internal quotation marks omitted).

**DISCUSSION**

**1.   Motion to Intervene**

Hanna argues that he has satisfied the requirements for permissive intervention under Rule 24(b) because he has intervened in a timely manner and his attempt to unseal the expert reports in this case clearly shares "common questions of law and fact" with the main action. Of the three requirements for permissive intervention under Rule 24(b)—commonality, timeliness, and jurisdiction—Defendant challenges only whether Hanna's motion is timely.

As to Defendant's assertion of untimeliness, Defendant argues that the expert reports at issue were ordered sealed by the Court on June 8, 2015. (Doc. 123). At that time, Hanna did not move to intervene and/or oppose the parties' Joint Request to Seal (Doc.122), instead waiting

1  almost four and a half months after the Court made its determination to seal the reports.
2  Defendant further argues that Hanna fails to provide any justification for this delay.

3  Citing to *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349 (9th Cir.
4  2013), Hanna argues that public policy strongly militates against a strict timeliness requirement
5  when challenging a protective order and that, as a practical and policy matter, Hanna could not
6  have sought to intervene any sooner than now. *Blum*, 712 F.3d at 1353 ("motions to intervene for
7  the purpose of seeking modification of a protective order in long-concluded litigation are not
8  untimely."). Hanna explains that the Court's prior order sealing the expert reports did so for the
9  explicit reason of furthering settlement. Hanna believed that attempting to intervene before the
10 settlement was finalized would have violated the spirit and goal of the order to seal. Thus, in an
11 effort to respect the Hall parties' settlement efforts, Hanna delayed seeking intervention to unseal
12 the expert reports. Now that settlement has finalized, the motion to intervene is ripe for the Court
13 to consider.

14 "Courts weigh three factors in determining whether a motion to intervene is timely: '(1)
15 the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other
16 parties; and (3) the reason for and length of the delay.'" *Cal. Dep't of Toxic Substances Control v.*
17 *Commercial Realty Projects, Inc.,* 309 F.3d 1113, 1119 (9th Cir. 2002)). When considering a
18 motion to intervene, "[t]imeliness is a flexible concept and its determination is left to the district
19 court's discretion." *Id.*

20 The Court finds that despite the arguable delay in seeking the proposed intervention,
21 Hanna's motion to intervene is timely. Nonetheless, since the proposed intervention is for the
22 sole purpose of unsealing the documents in question, the Motion to Unseal is denied, as seen
23 below. There is no other reason for Hanna to be a party to this action.

24 **2.    Motion to Unseal**

25 Hanna seeks to unseal the expert reports at issue here on the grounds that there is no
26 compelling reason to keep the sealing order in place after settlement. According to Hanna, this
27 Court sealed the expert reports solely for the purpose of furthering settlement negotiations, and in
28 "the interest [of] fostering efficient and effective settlement and resolution of complex litigation. .

.." *See Hall v. County of Fresno*, 2015 U.S. Dist. LEXIS 73962, *4 (E.D. Cal. June 8, 2015). Now that the Court has entered the consent decree in *Hall* and the settlement is finalized, the sealed expert reports have fully served their purpose and should therefore be unsealed. (Doc. 186 at 4).

Defendant offers three justifications for maintaining the expert reports under seal: (1) the parties to this action initially created the expert reports with the expectation that they would be kept confidential as a part of settlement negotiations; (2) the initial agreement between the parties jointly requested that the reports be submitted to the Court under seal; and (3) the public policy reasons for maintaining the reports under seal inures to the benefit of the public as a whole.

### A.   Compelling Reasons Exist to Keep Expert Reports Under Seal

Having again considered whether to maintain the expert reports under seal, the Court finds that there continues to be compelling reasons to keep the reports sealed for at least three reasons. First, the Court has already concluded that the need for disclosure here outweighs the public's need for access to the three expert reports challenged here. (Doc. 123). The passage of four months has not changed the Court's analysis in that respect. Second, the circumstances under which the expert reports were generated create additional reasons to preserve the documents' confidentiality. Lastly, minimal prejudice either to Hanna or to public policy considerations weighs against disclosure.

In the Ninth Circuit, the decision whether to unseal an item in the record is "one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (quoting *Nixon*, 435 U.S. at 599). Courts that consider the common law right of access are instructed to "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to overcome this strong presumption bears the burden of meeting a "compelling reasons" standard, under which the party must "articulate compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted). In determining whether the right of access should be overridden, courts should consider "all relevant

factors," including "the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Foltz*, 331 F.3d at 1135 (citing *Hagestad*, 49 F.3d at 1434). The presumption of access "may be overcome only 'on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture.'" *Hagestad*, 49 F.3d at 1434 (citations omitted).

### i.  *Court's Prior Sealing Order*

In the prior sealing order, the Court weighed the reasons to seal the expert reports against the need for public access to judicial records and found that there were compelling reasons to file the expert reports under seal.  (Doc. 123 at 2).  The Court recognized that from the beginning of this case, the parties, "rather than take the typical litigation adversarial posture, elected to work cooperatively together to achieve the best results for the jail population, in light of the claims alleged." *See Hall v. County of Fresno*, 2015 U.S. Dist. LEXIS 73962 (E.D. Cal. June 8, 2015). Under these cooperative settlement efforts, the parties jointly selected the experts to provide confidential information to candidly assess deficiencies in the jail system for the purpose of negotiating the settlement, inform the Court of such deficiencies and methods of correction, and to provide a factual framework for the development of the settlement agreement. The Court further noted in its order that these proceedings—which had consumed, quite literally, years of judicial resources—were finally nearing a conclusion after no less than fifteen settlement status conferences. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders.").  Given the Court's intimate familiarity with the settlement negotiations here, the Court concluded that the cooperative settlement model employed inured to the public benefit and therefore created compelling reasons to file the settlement generated expert reports under seal.  This Court therefore has already found compelling reasons for sealing the expert reports at issue here, and Plaintiff has not persuaded the Court that these reasons no longer exist.

### ii. *Cooperative Settlement Negotiations*

As noted above, a compelling reason to seal the expert reports in this case is predicated on the parties' agreement to forgo the traditional adversarial system, which typically permits each side to select its own expert witnesses, and instead adopt a cooperative settlement strategy. Here, the jointly selected experts provided confidential information to assist in negotiating the settlement and to provide a factual framework for the development of the settlement agreement. This exposure of complete and candid facts assisted the parties in reaching a settlement in complex and contentious litigation. That strategy also served an additional purpose of promoting a cooperative settlement model by Defendant—a public entity frequently involved in litigation—in subsequent cases.

The Court is persuaded that permitting the use of the expert reports against the County here will deter, if not destroy, such cooperative conduct in the future, unnecessarily deplete already taxed public coffers by having public entities litigate such cases rather than settle, and consume substantial judicial resources in complex cases such as this one. Thus, disclosure would cause a disservice to the public which benefits from the cooperative efforts made by the Defendant here. Accordingly, the Court again finds that the cooperative settlement efforts present a compelling reason to maintain the expert reports under seal.

Settlement negotiations and communications exchanged are inherently confidential. *See e.g., Four in One Co., Inc. v. S.K. Foods*, L.P., 2014 WL 4078232 (E.D. Cal 2014). As summarized in the case docket, the Court engaged in at least fifteen status conferences with the parties. The purpose of these conferences was for the Court to guide the parties through difficulties in negotiating a complex settlement. Much of the discussions and negotiations involved the experts' findings and remedial measures to address alleged deficiencies. Thus, this case is not one where the court has simply "approved" a settlement and ordered the documents "filed under seal" at the parties' request. Rather, this is a case where the Court was intricately involved in and supervised settlement discussions over two and a half year period, where detailed discussions occurred regarding problems and remedies identified by the expert reports. A strong public interest exists in favor of secrecy of matters discussed by parties during settlement

negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. Parties must be able to abandon their adversarial tendencies to some degree. The Court, again, finds, in this case, the need to protect the parties' settlement negotiations outweighs any necessity for disclosure.

### iii. *Public Policy Considerations*

As this Court has previously determined the reports should be sealed, and reaffirms the reports should remain sealed, the Court need not readdress whether sealing violates public policy considerations.

Nonetheless, to the extent Hanna argues public policy considerations, such as the public's right to be apprised of a public entity's malfeasance, the Court, under the circumstances presented here, finds the public benefit of improving the Fresno County Jail through a cooperative process outweighs the need for transparency with respect to the limited expert reports sealed here. There is little concern that the Defendant's actions leading up to and throughout these proceedings have been concealed from the public. The vast majority of the litigation and subsequent settlement documents in this case have been made publicly available. As a result, the litigation here has not been shrouded in secrecy, but, to the contrary, significant aspects of the settlement agreement required approval by the County Board of Supervisors (*See* Docs. 71, 73, 76) and the final settlement, terms of the settlement, and detailed remedial plan are filed in the Court's docket. The County is therefore not seeking to conceal its culpability, but protect a narrow set of documents prepared against its self-interest and for the betterment of the public at large.

The need for transparency in this instance therefore must yield to a greater public policy interests served by maintaining the expert reports under seal. Defendant has presented the unique circumstance where the damage that would be caused by making public certain aspects of judicial proceedings is so significant that it must override the public's interest in being able to freely scrutinize these documents. Therefore, the considerations detailed by Defendant weigh against unsealing the expert reports here, and the Court declines to disturb the prior sealing order.

### B. Minimal Prejudice to Hanna

Lastly, while the Court could examine prejudice under the good cause standard and not the compelling reasons standard, the Court notes that the sealing here creates little prejudice for Hanna because it does not preclude him from obtaining his own expert reports. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 678-79 (9th Cir. Cal. 2010) (records attached to dispositive motions require the court to apply the compelling reasons standard, whereas records attached to non-dispositive motions require the court to apply the "good cause" standard). Indeed, Hanna argues in his motion to intervene that "had the [Hall parties] not elected to approach settlement through mutually agreed upon experts, they would have used the traditional method of opposing experts who independently conducted the same kind of review, study and analysis of the myriad problems at the Fresno County Jail and the result would likely have been the same." Along that same reasoning, Hanna is free to retain his own experts, through the discovery process, who will or will not support Hanna's claims. Further, nothing in the sealing of the expert reports affects Hanna's ability to inspect the Fresno County Jail. As the Court stated in *Foltz*, maintaining confidentiality here "does not foreclose independent discovery in any collateral litigation. We see no conceivable policy reason to serve up such information on a silver platter." *Foltz*, 331 F.3d at 1138.

## CONCLUSION

For the reasons stated above, Hanna's motion to intervene and to unseal documents is DENIED, as follows:

1. Hanna's Motion to Intervene for the limited purpose of filing a Motion to Unseal is hereby DENIED as MOOT;

///
///
///
///
///
///

2. To the extent Hanna's motion seeks an order unsealing the expert reports of: (1) Dr. Michael Puisis regarding Fresno County Jail's medical program, (2) Richard Hayward, Ph.D., regarding Fresno County Jail's mental health program, and (3) David Rardin, regarding Fresno County Jail's Operations Review, the motion is DENIED.

IT IS SO ORDERED.

Dated: **December 11, 2015**              /s/ Barbara A. McAuliffe
                                          UNITED STATES MAGISTRATE JUDGE