UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN HALL, et al., | 1:11-cv-2047-LJO-BAM |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER RE DOMINIC HANNA'S MOTION FOR RECONSIDERATION (Doc. 189) OF ORDER DENYING MOTION TO INTERVENE AND UNSEAL COURT RECORDS (Doc. 188) |
| v. | |
| COUNTY OF FRESNO, | |
| Defendant. | |

## I. INTRODUCTION

Dominic Hanna ("Hanna") moved to intervene in order to move to unseal records in this closed case. *See* Docs. 177, 188. The Magistrate Judge denied Hanna's motion to unseal and therefore denied as moot his motion to intervene. Doc. 188. Hanna now moves for reconsideration of that order. Doc. 189. For the following reasons, the Court DENIES Hanna's motion for reconsideration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This now settled and closed case concerned a class action against the County of Fresno ("the County") for alleged constitutional violations at the Fresno County Jail ("the jail"). *See* No. CV F 11-2047-LJO-BAM, 2012 WL 1799179, at *1 (E.D. Cal. May 16, 2012).[1] "Plaintiffs' claims [were] based on allegations that County defendants fail[ed] to provide adequate medical, mental health, and dental care to inmates, fail[ed] to protect inmates with health issues from violence from other inmates, and discriminate[d] against inmates with health issues." *Id.* Plaintiffs sought declaratory and injunctive relief to remedy a number of allegedly dangerous and unconstitutional conditions at the jail. *Id.*

---

[1] Plaintiffs dropped their claims against various County officials. *See* Doc. 56. Prior to settlement, the County was the only Defendant in this case. *See* Doc. 56.

1

1  The parties[2] eventually agreed to pursue settlement negotiations. As part of that agreement, they agreed to retain joint experts who would inspect the jail and issue reports with recommendations. *See* Doc. 188 at 2; Doc. 65. "Based on those recommendations, the parties engaged in extensive settlement negotiations, which included significant Court participation and management." Doc. 188 at 2. "Over a two-year period, in over fifteen status conferences, the [Magistrate Judge] provided guidance and supervision of the settlement negotiations and engaged the parties in settlement discussions." *Id.* "The discussions and negotiations generally centered on the experts' findings and [proposed] remedial measures to address alleged deficiencies" at the jail. *Id.*

In May 2015, the parties moved for preliminary approval of the consent decree and their settlement of the action. *See* Doc. 112. The parties intended to submit four expert reports along with the motion in order to provide "factual information to evaluate the merits [of the] proposed consent decree, and agreed that the reports should be submitted under seal." Doc. 122 at 4. Accordingly, in June 2015, the parties requested approval to file under seal the expert reports. *See* Doc. 188 at 2; Docs. 122, 123. Finding there were compelling reasons to seal the reports[3], the Magistrate Judge granted the parties' request. *See* Doc. 123.

In July 2015, the Magistrate Judge issued Findings and Recommendations ("F&Rs") in which she recommended that the Court grant the parties' motion for preliminary approval of their settlement/consent decree. Doc. 175, The Court adopted the F&Rs in full. Doc. 132. In October 2015, the Magistrate Judge issued F&Rs in which she recommended that the Court grant the parties' motion for final approval of their settlement/consent decree. Doc. 175.[4]

While those F&Rs were pending before the Court, Hanna filed a motion to intervene for the

---

[2] All references to "the parties" are to Plaintiffs and the County, not to Hanna.

[3] The Magistrate Judge's sealing orders are discussed in more detail below.

[4] For clarity, the Court will refer to the parties' motions for preliminary and final approval of the consent decree and their settlement collectively as "the parties' settlement motion."

limited purpose of unsealing three of the four expert reports[5], which he argued were directly relevant to his independent case against the County pending before the Court. Doc. 177; *see also Hanna ex rel. Henderson v. Cnty. of Fresno*, No. 1:14-cv-142-LJO-SKO. Shortly after he filed the motion and before the Magistrate Judge ruled on it, the Court adopted in full the pending F&Rs, granted the parties' motion for final approval of their settlement/consent decree, and entered judgment. Doc. 179, 180. The County opposed Hanna's motion, arguing that it was untimely and, even if it were not, it should be denied because good cause exists to keep the expert reports under seal. *See* Doc. 185 at 7.[6]

The Magistrate Judge denied Hanna's motion to unseal the expert reports and, accordingly, denied his motion to intervene as moot. Doc. 188 at 10-11. The Magistrate Judge found that there were "at least three reasons" to keep the expert reports maintained under seal:

> First . . . the need for disclosure here outweighs the public's need for access to the three expert reports . . . . Second, the circumstances under which the expert reports were generated create additional reasons to preserve the documents' confidentiality. Lastly, minimal prejudice either to Hanna or to public policy considerations weighs against disclosure.

*Id.* at 6. As to the first reason, the Magistrate Judge reasoned that "the cooperative settlement model" the parties used in this case, which provided that the expert reports would remain confidential, benefitted the public in the form of reduced litigation costs. *Id.*; *see also* Doc. 123 at 3. Relatedly, the Magistrate Judge found an additional reason to seal the expert reports was that permitting the parties to use confidential expert reports would promote cooperative settlement by the County, "a public entity frequently involved in litigation." Doc. 188 at 8. Finally, the Magistrate Judge found keeping the expert reports under seal would not prejudice Hanna or the public, as "vast majority of the litigation and subsequent settlement documents in this case have been made publicly available," and "Hanna is free to retain his own

---

[5] Hanna only seeks to unseal the expert reports of Dr. Michael Puisis, Dr. Richard Hayward, and David Rardin. *See* Doc. 177 at 5. Accordingly, all further references to the "expert reports" are to only those reports.

[6] Hanna's counsel represents that he contacted the parties' counsel to express Hanna's intent to intervene to unseal. In response, counsel for Plaintiffs stated they did not oppose the motion to intervene, but the County opposed both the motion to intervene and any motion to unseal. *See* Doc. 177-1 at 1-2. Thus, it appears Plaintiffs do not oppose Hanna's attempt to unseal the expert reports.

experts." *Id.* at 9-10. Accordingly, the Magistrate Judge denied Hanna's motion to unseal the expert reports. *Id.* at 10-11.

Hanna now moves for reconsideration of the Magistrate Judge's order. Doc. 189.

### III. STANDARD OF DECISION

The parties dispute which standard of review the Court should employ. Citing only one sentence from *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 987 (D. Minn. 2010), Hanna claims the Court reviews the Magistrate Judge's order *de novo*. Doc. 189 at 4. The County, on the other hand, argues that the appropriate standard of review is "clearly erroneous or contrary to law" because the Magistrate Judge's order concerned a non-dispositive matter. Doc. 190 at 2-3.

Deciding which standard to apply turns on whether Hanna's motion is dispositive. "A non-dispositive order entered by a magistrate must be deferred to unless it is 'clearly erroneous or contrary to law.'" *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). Dispositive orders, however, are reviewed *de novo*. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).[7]

Hanna's motion comprises two motions: (1) a motion for permissive intervention under Rule 42(b) and (2) a motion to unseal. The Court can safely conclude that, *in general*, motions to seal (or unseal) are non-dispositive discovery orders when sought in the usual course of litigation, as they generally are not "dispositive of a claim or defense of a party." Rule 72(a). But the parties do not provide—and the Court cannot find—any binding authority holding that a motion to intervene is dispositive.[8] The Ninth Circuit seemingly has not addressed the issue, and courts are split on whether a motion to intervene is dispositive. *Compare Day v. Persels v. Assocs., LLC*, 729 F.3d 1309, 1321-22 (11th Cir. 2013) (collecting cases finding motions to intervene dispositive) *with Zurich v. Am. Ins. Co. v.*

---

[7] All further references to "Rules" are to the Federal Rules of Civil Procedure.

[8] The only authority Hanna provides is *Schwan's*, which concerned an application to enforce an administrative subpoena *duces tecum*, not a motion to seal (or unseal). 707 F. Supp. 2d at 987. The court reasoned that the application was a dispositive motion because "when an agency initiates a civil action by filing an application for order to show cause why a subpoena *duces tecum* should not be enforced, and when there is no related civil action pending, the Court's ruling on the application will resolve the entire action." *Id.* at 989. Simply put, *Schwan's* is irrelevant here.

4

*ACE Am. Ins. Co.*, No. CIV S-11-881-KJM-DAD, 2012 WL 3638467, at *3 n.2 (E.D. Cal. Aug. 21, 2012) ("The court recognizes that reasonable courts may disagree as to whether a motion to intervene is dispositive but in the absence of direction from the Ninth Circuit the Court determines that the motion in this instance is not dispositive." (citations omitted)). The Court also cannot locate any authority addressing the issue of whether a motion to intervene for the limited purpose of unsealing is a dispositive motion.

Although there is no clear Ninth Circuit authority, the Court concludes Hanna's motion is dispositive. "To determine whether a motion is dispositive," the Court must "look to the effect of the motion, in order to determine whether it is properly characterized as 'dispositive' or 'non-dispositive' of a claim or defense of a party." *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004). In particular, the court has emphasized that "to determine whether a magistrate judge's ruling denying a motion is dispositive," the Court must "examine whether the denial of the motion effectively disposes of a claim or defense *or precludes the ultimate relief sought*." *Bastidas v. Chappell*, 791 F.3d 1155, 1164 (9th Cir. 2015) (citations omitted and emphasis added).

For instance, the Ninth Circuit recently held that motions to remand to state court are dispositive. *Flam v. Flam*, 788 F.3d 1043, 1047 (9th Cir. 2015). In *Flam*, the magistrate judge issued an order remanding the case to state court and the district judge refused to consider it on a motion for reconsideration, finding that it lacked jurisdiction to do so. *Id.* at 1045. The court reasoned that the "the effect of a remand order is to end all federal proceedings," *id.*, which necessarily is dispositive of all relief sought by the party "put out of federal court." *Id.* at 1047.

Likewise, in *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992), the court has held that a stay of proceedings can be dispositive, depending on its practical effect. The magistrate judge stayed the plaintiff's entire case until he had exhausted certain remedies. *Id.* The Ninth Circuit found that the motion was dispositive because the magistrate judge's "stay effectively denied [the plaintiff's] request for an injunction" and "was in essence an involuntary dismissal of [his] action." *Id.* at 416-17.

On the other hand, the denial of a motion to stay may not be dispositive if it has no effect on the ultimate relief sought. In *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013), for instance, the Ninth Circuit affirmed a magistrate judge's order denying a party's motion to stay, reasoning that it "did not dispose of any claims or defenses and did not effectively deny him any ultimate relief sought." *Id.*

Although a motion to unseal brought by a party to a case generally is non-dispositive, the *only* relief Hanna seeks here is the unsealing of the expert reports. Thus, the Magistrate Judge's order denying his request to unseal the expert reports has the practical effect of denying him the ultimate relief he seeks as an intervenor in this case. The Court therefore concludes the order is dispositive and, accordingly, subject to *de novo* review. *See* 28 U.S.C. § 636(b)(1); *CMKM Diamonds*, 729 F.3d at 1259-60.

## IV. DISCUSSION

A. **Hanna's Motion to Seal.**

"Historically, courts have 'recognize[d] a general right to inspect and copy public records and documents, including judicial records and documents." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quoting *Nixon v. Warner's Commc'ns*, 435 U.S. 589, 597 (1978)). "[J]udicial records are public documents almost by definition, and the public is entitled to access by default." *Kamakana*, 447 F.3d at 1180. This "federal common law right of access" to court documents generally extends to "all information filed with the court," and "creates a strong presumption in favor of access to judicial documents which can be overcome only by showing sufficiently important countervailing interests." *Phillips ex. Rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (citations and quotation marks omitted). Court documents associated with non-dispositive motions may be sealed for "good cause," whereas documents associated with dispositive motions may be sealed only for "compelling reasons." *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006).

### 1.     The Parties' Settlement Motion Is a Dispositive Motion.

Citing *Phillips*, Plaintiffs and the County argued before the Magistrate Judge that the good cause standard applied because the expert reports were associated with a non-dispositive motion, *i.e.*, their private settlement negotiations. *See* Doc. 122 at 3. But the parties also correctly noted that, post-*Phillips*, "district courts differ on whether a motion to approve a settlement agreement that releases parties from a case is a dispositive or non-dispositive motion for sealing purposes." Doc. 122 at 3 n.1 (citations omitted). The parties seemingly noted this disagreement because they submitted the expert reports "in order to provide [the Court] with factual information to evaluate the merits [of the] proposed consent decree." Doc. 122 at 4.

While acknowledging that disagreement, the Magistrate Judge found that the parties' settlement motion was a dispositive motion. Doc. 123 at 2 (citing, among other cases, *Select Portfolio Serv. v. Valentino*, No. C 12-334 SI, 2013 WL 1800039, at *2 (N.D. Cal. Apr. 29, 2013) ("[D]istrict courts in this circuit differ on whether a motion to approve a settlement agreement that releases parties from a case is a dispositive or non-dispositive motion for sealing purposes") (collecting cases)). Accordingly, the Magistrate Judge found the compelling reasons standard applied to the parties' request to seal the expert reports because they were filed in connection with their settlement motion.

The Ninth Circuit has identified only a limited amount of motions that qualify as "dispositive" for sealing purposes. *See, e.g.*, *Kamakana*, 447 F.3d at 1180 (summary judgment); *Oliner*, 745 F.3d at 1026 (district court order denying interlocutory appeal from bankruptcy court); *In re Midland Nat'l Life Ins. Co. Annuity Sales Prac. Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012) (*Daubert* motion closely associated with merits of summary judgment motion); *Center for Auto Safety v. Chrysler Group, LLC*, __ F.3d __, 2016 WL 142440, at *7 (9th Cir. Jan. 11, 2016) (motion for preliminary injunction). Although the County and Hanna agree that the compelling reasons standard applies because the parties' settlement motion is dispositive, *see* Docs. 192 at 2, 193 at 2, the Court cannot locate any authority directly indicating that the motion constitutes a dispositive motion for sealing purposes.

7

Days after the Court requested supplemental briefing from the parties concerning dispositive motions and the compelling reasons standard (Doc. 191), the Ninth Circuit issued its opinion in *Chrysler Group*, 2016 WL 142440. The decision provides the court's most thorough discussion of what constitutes a dispositive motion for sealing purposes. After a thorough review of the case law, the court summarized its dispositive/non-dispositive precedent as focusing not on whether the motion is "technically dispositive," but rather "on whether the motion at issue is more than tangentially related to the underlying cause of action." *Id.* at *4 (citations omitted). The court reasoned that, although "nondispositive motions are sometimes not related, or only tangentially related, to the merits of the case . . . plenty of technically nondispositive motions . . . are strongly correlative to the merits of a case." *Id.* (footnote omitted). Accordingly, "public access [to motions and their attachments] will turn on whether the motion is more than tangentially related to the merits of a case." *Id.* at *6.

The distinction between dispositive/non-dispositive exists because "the public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Kamakana*, 447 F.3d at 1179; *see also Foltz*, 447 F.3d at 1180 (explaining that "[t]here are good reasons to distinguish between dispositive and nondispositive motions"). As the court explained in *Kamakana*:

> [T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments. We adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events.

447 F.3d at 1179 (citation and quotation marks omitted). Conversely, non-dispositive motions do not necessarily touch on the merits of the case; they are "often unrelated, or only tangentially related, to the underlying cause of action." *Id.* (citation and quotation marks omitted).

Although the Ninth Circuit made clear in *Chrysler Group* that the Court need not focus on whether a motion is "technically dispositive," analogous cases suggest the parties' settlement motion is a dispositive motion for sealing purposes. The most factually on-point case is *EEOC v. Erection Co, Inc.*,

900 F.2d 168 (9th Cir. 1990). In that case, although the court had no occasion to address whether the subject motion to approve an EEOC consent decree was a dispositive motion, the court seemingly applied the compelling reasons standard when determining whether the consent decree should be sealed. *See id.* at 170 (holding that when determining whether to seal a consent decree, "the lower court must base its decision on a compelling reason and articulate that reason clearly"). Like class action settlements, EEOC consent decrees require judicial approval and, as such, should be subject to public oversight. *See id.*, at 172 (Reinhardt, J., concurring in part and dissenting in part).

Further support for this conclusion is that the Ninth Circuit has long held that class members are bound by a court-approved class action settlement. *See Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1299 (9th Cir. 1981). Class members therefore are barred under the doctrine of *res judicata* from re-litigating their claims that are subject to any court-approved class action settlement because it constitutes a final judgment on the merits. *See id.*; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (holding that the district court's "approval of the settlement constituted a final judgment on the merits") (citation omitted); *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 476-77 (9th Cir. 1991) (holding consent decree has *res judicata* effect). This makes sense given that district courts must thoroughly assess the terms of a class action settlement to ensure that it is fair to the class. In doing so, the court is essentially making sure that the merits of the case are decided in a way that will adequately, fairly, and reasonably resolve the case with finality.

Finally, numerous district courts have applied the compelling reasons standard when determining whether to seal settlements/consent decrees cases brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. *See See Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 646-48 (S.D.N.Y. 2011) (joining "the overwhelming consensus of district courts that have considered the issue to hold that an FLSA settlement cannot be sealed absent some showing that overcomes the presumption of public access"). This is so because, like class action settlements and EEOC consent decrees, FLSA settlements must be court-approved. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.

1982).

Here, there is no dispute that the parties' settlement motion is a dispositive motion. *See* Doc. 192 at 2 ("the County concedes that the 'compelling reasons' standard would apply"). The motion indisputably goes to the merits of this case—the parties agreed that the Court's approving their settlement/consent decree would "dispose of all class claims in the case." Doc. 170 at 3. Accordingly, the Court concludes the parties' settlement motion constitutes a dispositive motion for sealing purposes because the Court's granting the parties' settlement motion qualifies as a resolution of the parties' dispute on the merits. And because the expert reports were submitted in connection with that motion, the County must provide the Court with compelling reasons to keep the reports under seal. *See Kamakana*, 447 F.3d at 1182 (explaining that because the proponent of "sealing bears the burden with respect to sealing . . . [and a] failure to meet that burden means that the default posture of public access prevails").

### 2.     Compelling Reasons Exist to Seal the Expert Reports.

The "compelling reasons" standard is "stringent," *Chrysler Group*, 2016 WL 142440, at *2, and imposes a "high threshold." *Kamakana*, 477 F.3d at 1180. To meet that threshold, the party must provide "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178 (citations and quotation marks omitted). This requires the party seeking to keep documents associated with a dispositive motion under seal "to present 'articulable facts' identifying the interests favoring continued secrecy . . . *and* to show that the specific interests overcame the presumption of access by outweighing the 'public interest in understanding the judicial process.'" *Id.* at 1181 (emphasis in original) (citations omitted). Although the Court "need not document compelling reasons to unseal," the Court must "conscientiously balance the competing interest of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179-80. To accomplish that goal, the Court must "weigh relevant factors, base its decision on a compelling reason, and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2009) (citation, footnote, and

quotation marks omitted). "'Relevant factors' include the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Id.* at 679 n.6 (citations and quotation marks omitted).

The County argues compelling reasons exist here. Doc. 192 at 3. The thrust of the County's position is that the parties commissioned the expert reports with the expectation that they would be maintained confidential, which "fostered cooperation" between the parties. *Id.* And, because of this cooperation, the case settled more quickly and efficiently, which benefitted the parties and the public in the form of lower litigation costs. *Id.* at 4. The County claims that keeping the expert reports under seal "will likely help facilitate this cooperative type of effort in the future," as the benefits of their efforts "would likely not have been reaped" had the parties engaged in standard adversarial litigation. *Id.* In sum, the County argues "[m]aintaining the parties' expectations, especially where they result in settlement" that benefitted the parties and the public is a compelling reason to keep the expert reports sealed. *Id.* at 3.

The Ninth Circuit has provided limited guidance on what qualifies as a "compelling reason" to seal court documents. The court has held that "*[i]n general*, 'compelling reasons' . . . exist when . . . court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (emphasis added) (citation and quotation marks omitted). None of these circumstances exists here; there is no indication that Hanna (or anyone else) intends to use the expert reports for an improper purpose.

Most relevant here, the Ninth Circuit has also held that "the interest in preserving the sanctity of the judicial process is a compelling reason." *Perry v. Brown*, 667 F.3d 1078, 1082 (9th Cir. 2012). In *Perry*, then-Chief Judge Walker made an agreement with the parties that a videotape of a trial would be sealed and used only by his chambers. *Id.* at 1081. He did so because the Supreme Court issued a

permanent stay of the public broadcast of the trial. *Id.* at 1082. Judge Walker eventually ordered the videotape to "be maintained under a strict protective order." *Id.* (footnote omitted).

A year after he issued his trial opinion, Judge Walker retired, and then-Chief Judge Ware assumed the case. *Id.* at 1083. Judge Ware subsequently granted the plaintiffs' cross-motion to unseal the videotape, finding that he was not bound by Judge Walker's prior agreement with the parties, and ordered the videotape unsealed. *Id.*

The Ninth Circuit reversed, holding that "preserving the sanctity of the judicial process" was a compelling reason that mandated the videotape to remain under seal. *Id.* at 1081. The court reasoned that because the judicial process "depends in no small part on the ability of litigants and members of the public to rely on a judge's word . . . explicit assurances that a judge makes . . . must be consistent and worthy of reliance." *Id.* at 1081, 1087. Noting that the sealing order "was directed precisely toward a single judicial record," the proponents of sealing "reasonably relied on Chief Judge Walker's specific assurances—compelled by the Supreme Court's just-issued opinion—that the recording would not be broadcast to the public." *Id.* at 1084. The court thus concluded that it would have been unreasonable for the party seeking to keep the videotape under seal to believe that it would be unsealed in the future. *Id.* at 1085. Accordingly, the Ninth Circuit held that Judge Ware abused his discretion when he found Judge Walker's decision to seal the videotape was not binding on him because "the setting aside of [Judge Walker's] commitments would compromise the integrity of the judicial process." *Id.* at 1088.

A seemingly important distinction between *Perry* and this case is that the Magistrate Judge's orders were entered on her own accord whereas Judge Walker's commitments to the parties were effectively mandated by the Supreme Court. *Id.* at 1087. But the Ninth Circuit explained that fact was only relevant in that it made Judge Walker's "solemn commitments . . . *even worthier* of the parties' reliance." *Id.* (emphasis added). In other words, a judge's promises to litigants need not be in response to orders from a higher court to be reasonably relied upon by the parties and therefore honored by a subsequent judge. *See id.*

*Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012)—the only authority relying on *Perry* the Court can locate—illustrates this principle well. *Lambright* concerned a state inmate's extensive federal habeas proceedings, *see id.* at 811, only a portion of which are relevant here. Lambright, the petitioner, was granted an evidentiary hearing concerning his claim that his counsel was ineffective at sentencing. *Id.* at 812. The parties engaged in discovery for the hearing and the petitioner successfully sought a protective order that would keep his deposition testimony confidential so that it could not be used at resentencing, if resentencing were granted. *Id.* at 812-13. The district court granted the petitioner's request, ordering that his deposition testimony would "be deemed to be confidential" and that the court's protective order would "apply in the event of a resentencing." *Id.* at 813. Critically, the order further protected "all discovery" and ordered that "[a]ny information, documents and materials obtained vis-à-vis the discovery process may be used . . . only for purposes of any proceedings incident to litigating the claims presented" in the petitioner's habeas petition. *Id.*

At the evidentiary hearing, the district court reiterated the terms of the protective order. *Id.* at 813-14. Specifically, the court told the petitioner that "there is not a risk of your testimony and statements concerning the crimes in this case being used against you in a future hearing . . . insofar as sentencing." *Id.* The court explained its view that any subsequent judge "would have to disregard the protective order that [the court] ha[d] issued" in order to use the petitioner's deposition testimony, and expressed doubt that any judge would admit the petitioner's testimony because he gave it contingent on the court's assurance that it would not be used in resentencing proceedings. *Id.* at 814.

Years later, the district court modified its protective order. *See id.* at 814-16. Among other things, "the court found that all evidence presented during the federal evidentiary hearing became public record because Lambright did not request that any materials be sealed." *Id.* at 816. The court reasoned that its protective order applied only to Lambright's testimony and not to the other evidence introduced at the hearing. *Id.*

The Ninth Circuit held this determination was an abuse of discretion. *Id.* at 820. The court found

13

that "Lambright was entitled to rely on the assurances of by the district judge, made during the evidentiary hearing, that the protective order extended to evidence introduced at the hearing." *Id.* at 821. The court noted that that the district court's "assurances were made in the context of [Lambright's] testimony," but found that "there is no reason to believe that the protective order applied with any less force to other protected material introduced during the evidentiary hearing." *Id.* Because of these assurances, Lambright was not required to move to seal the evidentiary hearing proceedings because he reasonably believed the district court's protective order was sufficient. *Id.* And because he reasonably relied on the protective order, the district court's setting aside its commitments to Lambright in the protective order "would compromise the integrity of the judicial process." *Id.* at 821-22 (quoting *Perry*, 667 F.3d at 1087). The court thus held that "'[t]he interest in preserving respect for our system of justice is clearly a compelling reason for' extending the protection of the order," and reversed the district court's decision. *Id.* at 822 (quoting *Perry*, 667 F.3d at 1088).

In light of *Perry* and *Lambright*, the Court concludes that the compelling reason of preserving the sanctity of the judicial process is present here. Though not on all fours with this case, the relevant facts of *Perry* are analogous and its principles are applicable here. The Magistrate Judge's orders represent a commitment to the County that the expert reports should—and would—remain under seal. Prior to filing them, the parties specifically and successfully sought the Magistrate Judge's assurance that the reports would be sealed. As in *Perry*, the County did not rely on a blanket protective order; the parties sought and were granted an order sealing only the expert reports. *See id.* at 1086. In the Court's view, "[t]here can be no question that [the County] reasonably relied on [the Magistrate Judge's] explicit assurances as to [the expert reports]." *Id.* The County therefore reasonably relied on the Magistrate Judge's assurances as part of the parties' settlement motion and in ultimately settling the case. *See id.* And the Magistrate Judge reaffirmed her assurance to the County when she denied Hanna's motion to unseal after both she and this Court had approved the parties' settlement.

As the Ninth Circuit explained, the question at issue in *Perry* was "whether a judge must in

exercising his discretion respect a *commitment* that his predecessor has made and upon which a party has reasonably relied." *Id.* at 1086 (emphasis in original). The court concluded that a judge must do so to preserve the integrity of the judicial system. To grant Hanna's motion, the Court would be required to disregard the Magistrate Judge's months-long assurance to the County that the expert reports would remain under seal. In light of *Perry* and *Lambright*, the Court concludes that it lacks the discretion to do so. "[T]he explicit assurances that a judge makes . . . must be consistent and worthy of reliance." *Perry*, 667 F.3d at 1087. Accordingly, the Magistrate Judge's orders must be respected to preserve the integrity of the judicial system, which is a compelling reason to keep the expert reports under seal.

The Ninth Circuit has indicated a finding that compelling circumstances exist is sufficient, without more, to keep records under seal. For instance, in *Perry*, the Ninth Circuit simply concluded that "the interest in preserving respect for our system of justice is clearly a compelling reason for maintaining the seal on the recording, notwithstanding any presumption that it should be released," without discussing any of interests of the proponents of unsealing. 667 F.3d at 1087-88. Similarly, in *Lambright*, the court held that "[t]he interest in preserving respect for our system of justice is clearly a compelling reason for extending the protection of the order, notwithstanding the fact that the materials are now public record," without discussing any of the interests at stake in ordering Lambright's evidentiary proceedings sealed. 698 F.3d at 821-22.

On the other hand, the court in *Chrysler Group* held that *after* finding compelling reasons to seal judicial records, "the court must *then* conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." 2016 WL 142440, at *2 (emphasis added) (citations and quotation marks omitted). The court also held in *Kamakana* that "[a]fter considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." 447 F.3d at 1179 (citations and quotation marks omitted); *see also In re Midland*, 686 F.3d at 1120 (describing *Kamakana* as "holding that *to find* compelling reasons the court must conscientiously

balance the competing interests and articulate the factual basis for the compelling reasons" (emphasis added)). The Court thus finds it prudent (if not necessary) to weigh the interests of (1) Hanna; (2) the County; and (3) the general public.

Hanna's interest in the expert reports is as a litigant with claims against the County that arose while he was housed in the jail. Hanna claims—and the County does not dispute—that the reports "each pertain to issues directly relevant to Mr. Hanna's civil rights action." Doc. 177 at 2. The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz*, 331 F.3d at 1131. Thus, Hanna's interests weigh in favor of unsealing the reports as "[a]llowing the fruits of [this] litigation to facilitate preparation in [Hanna's case] advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* (citations omitted).

The County's interests in maintaining the reports under seal (which are largely in line with the public's interests because the County is publicly funded) boil down to the parties' expectation that the reports would be sealed and that, because on that expectation, the parties were able to settle the case faster, more efficiently, and at a lower cost than they would have had they taken a typical adversarial approach. *See* Doc. 192 at 4-5. Although the parties' approach to this litigation is laudable and courts generally encourage settlement, the County does not provide and the Court cannot find any Ninth Circuit authority that suggests promoting settlement, whether in an active case or in the future, constitutes a compelling reason to keep the expert reports under seal.

To the extent the County suggests unsealing the records will expose the County to further litigation, whether vis-a-via a reduced ability or willingness to settle cases or otherwise, the Ninth Circuit has made clear that "exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citation omitted). But whether the general interest in settling cases is a compelling reason to seal records is less clear, at least in the Ninth Circuit. The Court is unable to locate any binding authority that has touched on the issue. Other courts, however, have

rejected fostering settlement as a reason to seal court records.[9]

Even assuming fostering settlement were a compelling reason to seal, other interests weigh against sealing records in a case that involves public institutions. "Since it is important for people to be able to assess the conduct of public institutions, the presumption weighs even more heavily in favor of public access than in the ordinary civil case." *Erection Co.*, 900 F.2d at 172 (Reinhardt, J., concurring in part and dissenting in part). Thus, some courts "are more likely to require disclosure when a party benefitting from the order of confidentiality is a public entity or official or when the judicial record involves matters of legitimate public concern." *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011) (citation and quotation marks omitted). Further, some courts hold that litigants, like the parties here, "who enjoy public subsidized dispute resolution should expect public oversight." *City of Greenville, Ill. v. Syngenta Corp. Protection, LLC*, 764 F.3d 695, 697 (7th Cir. 2014). Both considerations weigh in favor of disclosure here because the only party who will benefit from keeping the records under seal is the County—a public entity that enjoyed significant subsidized dispute resolution in the form of extensive, years-long settlement proceedings with the Magistrate Judge. *See* Doc. 188 at 2.

The public's interest here is its general right of access to judicial records and documents. In this case, the public's ability to access the expert reports bears on the public's right to understand—and oversee—the operation of three public institutions: this Court, the County, and the jail. *See Valley Broad. Co. v. U.S. Dist. Court—D. Nev.*, 798 F.2d 1289, 1294 (9th Cir.1986) (explaining that the presumption of public access "promot[es] the public's understanding of the judicial process and of

---

[9] *See, e.g.*, *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 346 (3d Cir. 1986) ("[T]he generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law right of access"); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (holding it is "immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement"); *see also Goesel v. Boley Int'l (H.K.), Ltd.*, 738 F.3d 831, 835 (7th Cir. 2013) (chambers opinion) ("[I]t's difficult to image what arguments or evidence parties wanting to conceal the amount or other terms of their settlement (apart from terms that would reveal trade secrets or seriously compromise personal or institutional privacy or national security) could present to rebut the presumption of public access to judicial records").

significant public events"). But, as the Magistrate Judge cogently explained:

> There is little concern that the [County's] actions leading up to and throughout these proceedings have been concealed from the public. The vast majority of the litigation and subsequent settlement documents in this case have been made publicly available. As a result, the litigation here has not been shrouded in secrecy, but, to the contrary, significant aspects of the settlement agreement required approval by the County Board of Supervisors . . . and the final settlement, terms of the settlement, and detailed remedial plan are filed in the Court's docket. The County is therefore not seeking to conceal its culpability, but to protect a narrow set of documents prepared against its self-interest and for the betterment of the public at large.

Doc. 188 at 9. Simply put, the public's interest in understanding this litigation and its underlying issues will not be meaningfully hampered or harmed by keeping the expert reports under seal.

More importantly, the general public and the courts as public institutions have a compelling interest in maintaining the integrity of the judicial process. It is for this reason that the Court concludes the expert reports must remain sealed. Although the Court may have viewed the matter differently than did the Magistrate Judge, the judicial process "depends in no small part on the ability of litigants and members of the public to rely on a judge's word." *Perry*, 667 F.3d at 1081. The Magistrate Judge made a commitment to the County that the expert reports would be kept under seal and the Court is bound to respect that commitment, particularly given the County's reasonable reliance on it. *See id.*[10] "To revoke [the Magistrate Judge's] assurances after [the County] had reasonably relied on them would cause serious damage to the integrity of the judicial process." *Id.* at 1087. The Court therefore concludes that the compelling interest of maintaining the integrity of the judicial system outweighs Hanna's and the public's interests in unsealing the expert reports. Accordingly, Hanna's motion to unseal is DENIED.

B.  **Hanna's Motion to Intervene.**

In general, "permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's

---

[10] There is no indication that, had the Magistrate Judge denied the request to seal the expert reports, the County would have left the denial unchallenged. The County made its position clear before the Magistrate Judge and this Court that it strongly prefers that the reports remain confidential, as evidenced by the fact the parties generated the reports with the expectation they would remain confidential, did not submit them until they obtained an order from the Court placing them under seal, and the County opposes Hanna's motion to unseal.

1 claim or defense and the main action.'" *Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 712 F.3d
2 1349, 1353 (9th Cir. 2013) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir.
3 1992)). The County did not dispute before the Magistrate Judge that Hanna's motion to intervene
4 satisfied the first and third elements, but argued that the motion was untimely.[11]

5 Although the Magistrate Judge denied Hanna's motion to intervene as moot, she found that the
6 motion was timely. Doc. 188 at 5. The County apparently does not dispute this finding. *See* Doc. 190. In
7 any event, the Court agrees with Magistrate Judge's finding and reasoning that Hanna's motion was
8 timely. Accordingly, the Court finds that Hanna may intervene in this case for the limited purpose of
9 moving to unseal the expert reports. *See generally San Jose Mercury News, Inc. v. U.S. Dist. Court—*
10 *Northern Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999) ("Nonparties seeking access to a judicial
11 record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)." (collecting
12 cases)). Nonetheless, because the Court denies his motion to unseal, the Court DENIES AS MOOT his
13 motion to intervene.

14 **V. CONCLUSION AND ORDER**

15 For the reasons stated above, Hanna's motion to unseal the expert reports is DENIED and his
16 motion to intervene is DENIED AS MOOT. Accordingly, his motion for reconsideration (Doc. 189) is
17 DENIED.
18 IT IS SO ORDERED.

19    Dated:   **February 1, 2016**          **/s/ Lawrence J. O'Neill**
                                                               UNITED STATES DISTRICT JUDGE

---

[11] This may be because the County recognized Hanna was not required to establish those elements. *See Beckman*, 966 F.2d at 473-74 (holding first and third elements for Rule 24(b) permissive intervention are not required when intervenor only seeks to challenge a protective order).